IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAULA VIVODA-KLOTZ<br><br>    Plaintiff,<br><br>v.<br><br>TRUMBULL COUNTY BOARD OF COMMISSIONERS,<br><br>    Defendant. | CASE NO.  4:22-CV-1005<br><br>JUDGE:  BENITA Y. PEARSON<br><br>**FIRST AMENDED COMPLAINT**<br><br>**<u>JURY DEMAND ENDORSED HEREON</u>** |

Plaintiff, Paula Vivoda-Klotz ("Plaintiff" or "Vivoda-Klotz"), by and through the undersigned counsel, and for her First Amended Complaint against Defendant Trumbull County Board of Commissioners ("Defendant" or "Trumbull County"), states as follows:

1. This is a civil action for declaratory judgment, injunctive relief, lost wages and income, monetary damages, and attorney fees for unlawful interference with Plaintiff's rights, discrimination, and retaliation under the Family & Medical Leave Act 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), and Ohio's anti-discrimination law contained in Ohio Revised Code Chapter 4112.

2. Venue is proper in this Court because Defendant employed Plaintiff at all relevant times in Trumbull County, Ohio, and the acts giving rise to Plaintiff's claims took place in the City of Warren, Trumbull County, Ohio.

3. This Court has subject matter jurisdiction over Plaintiff's FMLA and ADA claims pursuant to 28 U.S.C. § 1331.

4. This Court may exercise supplemental jurisdiction over Plaintiff's Ohio Revised Code Chapter 4112 claims pursuant to 28 U.S.C § 1367(a).

1

5. Plaintiff filed two timely charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which were dual filed with the Ohio Civil Rights Commission, with respect to her disability discrimination and retaliation claims.

6. Plaintiff filed her first charge on February 15, 2021, alleging ongoing disability discrimination and retaliation (EEOC Charge No. 532-2021-01074). Plaintiff received her related Notice of Right to Sue on August 4, 2022. A copy of the Notice of Right to Sue is attached as Exhibit A.

7. Plaintiff filed her second charge on May 31, 2022, also alleging ongoing disability discrimination and retaliation (EEOC Charge No. 532-2022-02335). Plaintiff received her related Notice of Right to Sue on or about June 30, 2022. A copy of the Notice of Right to Sue is attached as Exhibit B.

**PARTIES**

8. Plaintiff Paula Vivoda-Klotz is a United States citizen residing in Warren, Trumbull County, Ohio, and is employed by the Defendant.

9. At all times relevant, Vivoda-Klotz was an "eligible employee" within the meaning of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2611(2). Vivoda-Klotz is also an "employee" for purposes of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111(4) and for purposes of Chapter 4112 of the Ohio Revised Code, R.C. 4112.01(A)(3).

10. Defendant Trumbull County Board of Commissioners are the duly elected Commissioners of Trumbull County, Ohio, a political subdivision of the State of Ohio. Trumbull County is an "employer" under the FMLA, 29 U.S.C. § 2611(4)(A)(iii) and 29 U.S.C. § 203(d); under the ADA, 42 U.S.C. § 12111(5); and under R.C. 4112.01(A)(2). Trumbull County is also a "person" as defined in R.C. 4112.01(A)(1).

## FACTS

11. Defendant hired Vivoda-Klotz in 2004 as a journal clerk.

12. Effective January 1, 2017, Defendant promoted Vivoda-Klotz to the position of Assistant Clerk.

13. As the sole Assistant Clerk in the Commissioner's office, Vivoda-Klotz received training to be the successor to the Clerk in the event the Clerk decided to retire and performed the duties of the Clerk in the Clerk's absence. Vivoda-Klotz received additional pay when she performed the duties of the Clerk.

14. As Assistant Clerk, Vivoda-Klotz was assigned a private office beginning in or about June 2019.

15. In September 2020, Vivoda-Klotz took a leave of absence due to her own serious and disabling health conditions including post-traumatic stress disorder, generalized anxiety disorder, and major depressive disorder.

16. In November 2020, during the leave of absence and one week after Vivoda-Klotz's physician notified the Defendant of her request for a reduced work schedule upon her return to work, Defendant eliminated the Assistant Clerk position, demoted Vivoda-Klotz back to journal clerk, and gave her office to another clerk.

17. Both before and after she returned to work, Vivoda-Klotz complained to Defendant's human resources director that she believed the demotion and loss of her office was retaliation for her use of the leave of absence and because of her request for a reduced work schedule.

18. Vivoda-Klotz returned to work on or about December 2, 2020, on a reduced three-days-per-week (Monday-Wednesday-Friday) schedule per her doctor's orders and with approval from Defendant's human resources director.

19. In early January 2021, upon information and belief, Commissioner Niki Frenchko told the other commissioners that she wanted to terminate Vivoda-Klotz even though Frenchko had only just taken office.

20. Frenchko and Vivoda-Klotz's then-direct supervisor, Clerk Paulette Godfrey, attempted to isolate Vivoda-Klotz by, among other things, ordering Vivoda-Klotz not to communicate with Frenchko even about work. Godfrey also directed other staff not to help Vivoda-Klotz with work and to count and report typographical errors in Vivoda-Klotz's written work product in order to develop a pretext to discipline and terminate Vivoda-Klotz.

21. On January 15, 2021, after Vivoda-Klotz had been out of the office attending a medical appointment the prior day, Commissioner Nikki Frenchko directed a human resources representative to discipline Vivoda-Klotz for the first time in Vivoda-Klotz's career for the trivial matter of having documents at her desk that were not filed. The Clerk and other staff in the Commissioner's office who did not have reduced work schedules as accommodations for disabilities were not disciplined for similarly unfiled documents.

22. Frenchko also directed HR to cancel approval of Vivoda-Klotz's Monday-Wednesday-Friday schedule – without a legitimate business reason – and to require Vivoda-Klotz to work a Tuesday-Wednesday-Thursday schedule instead. At this point, Frenchko had been on the job less than two weeks.

23. Vivoda-Klotz told Defendant that she could swap Tuesdays off for Mondays, but that she could not work on Thursdays due to a standing medical appointment. In response,

4

Defendant refused or failed to provide clear direction on Vivoda-Klotz's request to continue taking off Thursdays.

24. On Wednesday, January 20, Vivoda-Klotz told Godfrey that she needed Thursdays off and would bring a note from her doctor in support of her request. Godfrey did not tell Vivoda-Klotz she was required to appear and work the next day.

25. On Thursday, January 21, Vivoda-Klotz went to her standing medical appointment as she had during previous weeks and as she had discussed with Godfrey.

26. That day, Frenchko demanded that the HR Director fire Vivoda-Klotz because she had attended her doctor's appointment and was absent from work.

27. On Friday, January 22, Vivoda-Klotz brought in documentation from her healthcare provider confirming her need for Thursdays off for her standing appointment. She delivered the documents to human resources.

28. Frenchko angrily confronted Vivoda-Klotz and demanded to know what documents Vivoda-Klotz had given to human resources. When Vivoda-Klotz said they were confidential medical documents, Frenchko told Vivoda-Klotz that she needed to give them to Frenchko and that Frenchko already had Vivoda-Klotz's personnel file on her desk and, "I will get it anyway."

29. The same day, Godfrey emailed Vivoda-Klotz and chastised her for "circumvent[ing] me" by going to HR about the reduced work schedule, even though (i) HR had been Vivoda-Klotz's point of contact related to her FMLA leave and return to work going back to the beginning of her leave of absence in September, and (ii) Vivoda-Klotz had discussed her ongoing need for Thursdays off with Godfrey just two days prior.

5

30. Godfrey told Vivoda-Klotz that January 21 would be considered an unexcused absence and Vivoda-Klotz was in violation of disciplinary policies and should not have come to work on January 22 because she was scheduled to work on Thursdays and not Fridays.

31. The next week, having provided multiple doctors' notes, Vivoda-Klotz again attended her Thursday medical appointment. On Friday, January 29, 2021, Vivoda-Klotz went to speak with Godfrey in the morning. Godfrey refused to communicate with Vivoda-Klotz. Instead, she dismissively asked why Vivoda-Klotz was at work on a Friday and sent her home for the day.

32. Defendant repeatedly failed or refused to respond clearly to Vivoda-Klotz's attempts to communicate about her need for time off. Upon information and belief, Defendant's conduct was intentional and designed to trip-up Vivoda-Klotz so that Defendant could develop a pretext to terminate her employment.

33. On February 1, 2021, Vivoda-Klotz requested an extension of her reduced work schedule, with Mondays and Thursdays off. She provided additional medical documentation to HR in support of her request.

34. On February 3, 2021, she asked Godfrey to confirm that her absence the next day would be excused. Godfrey responded by demanding even more documentation from her medical provider.

35. From the time Frenchko took office in early January 2021, she and Godfrey repeatedly and unreasonably scrutinized Vivoda-Klotz's work and work schedule, bullied, harassed, and insulted Vivoda-Klotz because of her disabilities and her request for and use of the leave of absence and reduced work schedule.

36. On February 12, 2021, Godfrey issued Vivoda-Klotz a written warning in part because Vivoda-Klotz was crying at her desk due to the continuous harassment by Godfrey and

6

Frenchko. Defendant had ignored Vivoda-Klotz's request weeks earlier to be restored to an office with a door as a reasonable accommodation of her disability and a means to reduce and manage her stress at work.

37. Vivoda-Klotz filed her initial EEOC charge alleging ongoing disability discrimination and retaliation with the EEOC on February 15, 2021 (the "2021 Charge"). The 2021 Charge identified Frenchko and Godfrey as the primary actors engaged in retaliation and discriminatory harassment.

38. After Vivoda-Klotz filed her 2021 Charge, Frenchko became even more openly hostile to Vivoda-Klotz, including by regularly video recording Vivoda-Klotz on her cell phone while Vivoda-Klotz was working despite requests to stop, posting on social media about Vivoda-Klotz in violation of county policy, and repeatedly belittling and insulting her in emails, in public meetings, and in media interviews.

39. On or about March 19, 2021, Frenchko posted a comment on Facebook in response to a local newspaper's story about Vivoda-Klotz's 2021 Charge: "One does not get an entire day off for a Dr. appointment."

40. On June 9, 2021, Vivoda-Klotz joined with other staff in the commissioners' office in a written complaint to the HR Director about Frenchko's "intimidation and harassment" creating a hostile work environment.

41. The HR Director substantiated the staff's hostile work environment complaint.

42. Frenchko's harassment of Vivoda-Klotz continued and escalated over time even as Godfrey retired as Clerk in summer 2021 and Vivoda-Klotz was eventually named as her replacement by the other two commissioners.

43. Vivoda-Klotz complained in writing about Frenchko's retaliatory and harassing behavior numerous times, including on June 23, July 15, July 19, and November 18, 2021.

44. On or about May 20, 2022, Frenchko posted a video of Vivoda-Klotz to Frenchko's Facebook page along with blatantly false comments that Vivoda-Klotz "'licked [another commissioner's] wounds' when he was going through his divorce. And spent entire days in his office with the door closed." Frenchko went on to insinuate that Vivoda-Klotz was made Clerk after Godfrey retired because of sexual favors Vivoda-Klotz provided to the other commissioner.

45. On May 23, 2022, Vivoda-Klotz made a written complaint to human resources about Frenchko's repeated retaliatory and harassing posts on social media.

46. On or about May 24, 2022, Frenchko asked on Facebook whether Vivoda-Klotz "seem[ed] honest to you? Drop your YES or NO below. And share." Frenchko went on to accuse Vivoda-Klotz of "dishonesty, evasiveness, and insubordination."

47. On multiple occasions during the preceding 15 months, Frenchko tried to physically intimidate Vivoda-Klotz by, for example, invading her personal space, screaming at Vivoda-Klotz that she was "f*cking stupid," and pursuing Vivoda-Klotz through the office over Vivoda-Klotz's protests. When Vivoda-Klotz asked Frenchko to stop and told her that her behavior was intimidating, Frenchko responded, "Good."

48. The cumulative effect of Defendant's continuous and ongoing harassment on Vivoda-Klotz has been, among other things, to cause her to dread going to work at times, to have a direct and negative effect on her mental health, to monopolize her time and attention to the extent of disrupting her ability to perform her job and to prevent her from fully engaging at times in her non-working life, and to cause her to seek additional medical treatment.

## COUNT I
## (FMLA Violation — Interference)

49. Vivoda-Klotz re-alleges all prior paragraphs and incorporates them here by reference.

50. The purpose of Vivoda-Klotz's leave of absence from September to early December 2020 was to enable her to receive medical treatment for ongoing disabling conditions that constituted one or more "serious health condition[s]," as that term is defined in 29 U.S.C. § 2611(11).

51. Defendant recognized and approved Vivoda-Klotz's leave of absence as FMLA leave.

52. By demoting Vivoda-Klotz during her leave of absence and taking away her private office as described above, Trumbull County interfered with Vivoda-Klotz's FMLA right to restoration to the same position or one equivalent to the position she held prior to her leave of absence.

53. As a direct and proximate result of Trumbull County's unlawful interference with her rights under the FMLA, Vivoda-Klotz suffered lost salary, wages, and benefits; has incurred costs of litigation and attorney fees; and has been otherwise injured, the extent of which will be more fully revealed at the trial of this matter.

54. Trumbull County lacked good faith and/or reasonable grounds to believe that it did not violate the FMLA with respect to Vivoda-Klotz, thereby entitling her to an award of liquidated damages.

## COUNT II
## (FMLA Violation — Retaliation)

55. Vivoda-Klotz re-alleges all prior paragraphs and incorporates them here by reference.

56. Vivoda-Klotz's use of FMLA leave during 2020 as described above and her complaints about the demotion and loss of her office were protected activity.

57. Trumbull County demoted Vivoda-Klotz from Assistant Clerk to Journal Clerk, took away her private office, harassed her, disciplined her without good cause, and unfairly scrutinized her work, all in retaliation for her use of FMLA leave, as described above.

58. As a direct and proximate result of Trumbull County's unlawful retaliatory conduct, Vivoda-Klotz suffered lost salary, wages, and benefits; has incurred costs of litigation and attorney fees; and has been otherwise injured, the extent of which will be more fully revealed at the trial of this matter. Some or all of Vivoda-Klotz's damages will continue to accrue indefinitely into the future.

59. Trumbull County lacked good faith and/or reasonable grounds to believe that it did not violate the FMLA with respect to Vivoda-Klotz, thereby entitling her to an award of liquidated damages.

**COUNT III**
**(Disability Discrimination – Failure to Accommodate under the ADA and R.C. 4112.052)**

60. Vivoda-Klotz re-alleges all prior paragraphs and incorporates them here by reference.

61. Vivoda-Klotz's medical conditions are mental or physical impairments that substantially limit her in major life activities including but not limited to working, thinking, concentrating, and interacting with others. Her condition also substantially affects major bodily functions including brain function.

62. At all relevant times, Defendant regarded Vivoda-Klotz as disabled and treated her as though she were disabled.

10

63. At all relevant times, Vivoda-Klotz was qualified to perform the job duties of Clerk, assistant clerk, and journal clerk for Defendant, with or without reasonable accommodation, and was thus a "qualified individual with a disability" as that term is defined under the ADA and for purposes of Chapter 4112 of the Ohio Revised Code.

64. Vivoda-Klotz's requests for a reduced work schedule including Thursdays off during the period of December 2020 through the beginning of March 2021 constituted requests for reasonable accommodations under the ADA and Ohio law.

65. Vivoda-Klotz's request to be restored to a private office after her return from her FMLA leave of absence constituted a request for a reasonable accommodation under the ADA and Ohio law.

66. Trumbull County violated the ADA and Chapter 4112 of the Ohio Revised Code by failing to accommodate Vivoda-Klotz when it disciplined her for taking time off for her medical treatments, when it sent her home from work on Friday, January 29, 2021, and when it ignored her request to use a private office as an accommodation of her disability.

67. Trumbull County violated the ADA and Chapter 4112 of the Ohio Revised Code when it failed to engage in good faith in an informal, interactive process to determine whether to grant Vivoda-Klotz's requests for reasonable accommodations or to propose alternative reasonable accommodations.

68. Trumbull County's refusal or failure to reasonably accommodate Vivoda-Klotz's disability deprived Plaintiff of rights guaranteed to her by the ADA and Chapter 4112 of the Ohio Revised Code.

69. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress and humiliation; lost salary, wages, and benefits; incurred attorneys' fees and

costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

### COUNT IV
### (Disability Discrimination – Hostile Work Environment under the ADA and R.C. 4112.052)

70. Vivoda-Klotz incorporates by reference and re-alleges each of the foregoing statements as if fully rewritten.

71. Vivoda-Klotz's medical conditions are mental or physical impairments that substantially limit her in major life activities including but not limited to working, thinking, concentrating, and interacting with others. Her condition also substantially affects major bodily functions including brain function.

72. At all relevant times, Defendant regarded Vivoda-Klotz as disabled and treated her as though she were disabled.

73. At all relevant times, Vivoda-Klotz was qualified to perform the job duties of Clerk, assistant clerk, and journal clerk for Defendant, with or without reasonable accommodation, and was thus a "qualified individual with a disability" as that term is defined under the ADA and for purposes of Chapter 4112 of the Ohio Revised Code.

74. Trumbull County subjected Vivoda-Klotz to regular and ongoing harassment because of her disability as described above.

75. Trumbull County's harassment of Vivoda-Klotz was sufficiently severe and pervasive to alter the terms and conditions of her employment by disrupting her ability to work, by preventing her from communicating with one of the three commissioners and at times with her direct supervisor the Clerk, and by forcing her to take time off to avoid the objectively unreasonable stress created by the Defendant's unlawful discriminatory conduct.

76. Trumbull County's unlawful conduct deprived Plaintiff of rights guaranteed to her by the ADA and Chapter 4112 of the Ohio Revised Code.

77. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress and humiliation; lost salary, wages, and benefits; incurred attorneys' fees and costs of litigation; and has been otherwise injured. Some or all of her damages will continue to accrue indefinitely into the future.

## COUNT V
### (Retaliation In Violation of the ADA and R.C. 4112.02(I))

78. Vivoda-Klotz incorporates by reference and re-alleges each of the foregoing statements as if fully rewritten.

79. Vivoda-Klotz engaged in protected activity under the ADA and Chapter 4112 of the Ohio Revised Code each time she requested a reasonable accommodation of her disability including when she requested:

   A. a leave of absence beginning in September 2020;

   B. to return to work on a reduced work schedule beginning in December 2020; and

   C. assignment of private office when she returned from her leave of absence.

80. Vivoda-Klotz engaged in protected activity under the ADA and Chapter 4112 of the Ohio Revised Code by complaining to human resources:

   A. about Frenchko's demands to access her private medical records in connection with her requests for time off due to her disabling conditions;

   B. about harassment and discrimination by Godfrey and Frenchko due to her disabilities and her requests for and use of time off as a reasonable accommodation of her disabilities; and

13

   C. about ongoing harassment in retaliation for prior complaints.

81. Vivoda-Klotz engaged in protected activity under the ADA and Chapter 4112 of the Ohio Revised Code by filing her 2021 Charge with the EEOC on February 15, 2021.

82. Vivoda-Klotz engaged in protected activity under the ADA and Chapter 4112 of the Ohio Revised Code by filing her 2022 Charge with the EEOC on May 31, 2022.

83. At all times, Defendant Trumbull County was aware of Vivoda-Klotz's protected activity.

84. Because of Vivoda-Klotz's protected activity, Trumbull County retaliated against her by demoting her, taking away her office, harassing her, and targeting her for termination for trumped-up reasons, as described herein.

85. As a direct and proximate result of Defendant's unlawful retaliation, Vivoda-Klotz has suffered, and will continue to suffer, emotional distress, lost wages, pension/retirement benefit accruals, and other benefits to which she would be entitled. Some or all of Plaintiff's damages will continue indefinitely into the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Honorable Court

A. Issue a declaratory judgment finding the acts and omissions of Defendant as set forth herein violated Plaintiff's rights under the FMLA, ADA, and O.R.C. Chapter 4112;

B. Issue a preliminary and permanent injunction requiring Defendant to cease and prevent harassment and discrimination of Plaintiff and to otherwise comply with the anti-retaliation provisions of the FMLA, ADA, and O.R.C. Chapter 4112;

    C.    Make Plaintiff whole with appropriate back pay, benefits, and compensatory damages, all in an amount to be proved;

    D.    Award Plaintiff statutory liquidated damages under the FMLA;

    E.    Grant Plaintiff pre-judgment and post-judgment interest on the amounts awarded as allowed by law;

    F.    Award Plaintiff her costs and reasonable attorney fees; and,

    G.    Grant such other relief as is necessary to make Plaintiff whole.

Respectfully submitted,

*/s/ David N. Truman*
David N. Truman (0082347)
david@employmentlawpartners.com
Stuart G. Torch (0079667)
stuart@employmentlawpartners.com
EMPLOYMENT LAW PARTNERS, LLC
4700 Rockside Rd.
Suite 530
Independence, Ohio 44131
216.382.2500 (voice)
216.381.0250 (facsimile)

*Counsel for Plaintiff*

## **JURY DEMAND**

    Plaintiff demands a trial by the maximum number of jurors permitted by law on all issues so triable.

/s/*David N. Truman*
DAVID N. TRUMAN (#0082347)

## CERTIFICATE OF SERVICE

I certify that on August 4, 2022, a true copy of the foregoing FIRST AMENDED COMPLAINT was served on all counsel of record via CM/ECF.

/s/*David N. Truman*
DAVID N. TRUMAN (#0082347)